379 PDS Consultants v. United States 379 PDS Consultants v. United States You're splitting your time again, this case? Yes, I am. So we're running the clock individually for you. It ain't your time. May it please the court. The trial court failed to understand that while the 2006 VBA requires VA to apply the rule of two when it's conducting a competitive procurement, here VA was ordering goods not through competition, but through a non-competitive process involving a mandatory source. Why is that clear that it only applied to a competitive procurement? What is it in the statutory language? Is there anything the kingdom tells us about the limitations of the 2006 requirements? The court needs to read the plain language of 8127D in the context of the existing statutory and regulatory procurement framework, which would be CICA and the FAR. The 8127D tells VA how to have a competition, but it doesn't tell VA when to have the competition. VA needs to look at CICA and the FAR to determine when it should have a competition. And the CICA provides some important exceptions to when the agency must have open and full competition. One is when there's a mandatory source, and that's what we have here with the J-1, the Ability One Procurement List. 3304A5 provides a specific exemption to open and full competition, and the J-1 is one of those exceptions. It says that the agency shall procure the product or service from the list. OK, so I'm confused because it seems to me the government changed its position a few times as we got to this point. So the position you're articulating today is consistent with the position you've had at some points. But at other points, the regulations changed and said, OK, we're going to apply this for what's already on the procurement list, but not for future additions. Is that right? So how does the position that the government took at least a couple times as we were getting here comport with what you're telling us now about how competitive stuff is not included? So what's important to recognize is that VA has consistently taken the position that the J-1, the Ability One Procurement List, is a mandatory source. Later in 2017, VA tried to draw a bright line rule, but still understood that the J-1, Ability One Procurement List, was a mandatory source for at least a portion of time, before January 2010. And so again, the distinction here is between the competitive procurements, where the Rule of Two would arise. The Rule of Two is a form of a restricted competition. Well, it is a restricted competition. It's still a competition. But we never get to whether VA needs to have a restricted competition if there's a mandatory source, like we have here. And the FAR tells us that this is a mandatory source. So not only does CICA take the J-1 completely out of competition and make rules for competition, such as the Rule of Two, inapplicable, but we have the FAR, and that's in 8.002, telling us that the Ability One Procurement List is a mandatory source. And so sort of in the hierarchy, you would have the contracting officer would first look to see if there is a mandatory source. If there is, that's sort of the end of the inquiry for the contracting officer. I'm sorry, assuming that the procurement list has it. If what you're saying is correct, why then, when Congress passed its earlier version of the statute in 2003, did it feel the need to explicitly exempt the Ability One listing if, as you say, we're going to put the FAR regulations on top of this and exclude that? There's many differences, Your Honor, between the 2003 Veterans Benefit Act, which was applied to all agencies, and the 2006 VBA, which applies only to VA. And so for example, in addition to the difference that you noted, 8127I specifically prioritizes contracting preferences for VA. That wasn't in the 2003 Veterans Benefit Act. And then you have 8128A, which is in the 2006 Veterans Benefit Act, but not a comparable provision in the 2003 Veterans Benefit Act. So you see Congress approaching the issue differently. And because Congress didn't, for example, in the Rosello case, where there was an issue about changes in the bill over time and Congress deleting a provision in the final version, we don't have that here. We just have Congress approaching the issue in two different ways. And providing, for example, an 8128A. But they did it two different ways in two different time frames. And in one, they specifically provided for a broad exception. And then the other, they did not, right? That is true. But we can't read the 2006 VBA to alter the normal process where a contracting officer would go to a mandatory source. And then if the mandatory source doesn't, if there is no mandatory source, then to move on to non-mandatory sources. The court can't read Congress to be altering that process by assuming that Congress was doing that implicitly or sub silencio. Congress, when it wanted in 2006. Well, what about the language of 8127D tells you that it was not meant to apply to all contracts? Because first of all, it's talking about restricted competitions, which is a term of art that falls under SICA 3303, which is still competition, but just one form of competition. It's restricted to a particular, usually a particular socioeconomic group that the Congress is trying to promote. So the language itself, and then. Didn't Kingdomware say that 8127D requires the VA to apply the rule to all contracting determinations, period? There are instances in the Supreme Court's decision where it uses broad language referring to contracting generally. But what's key is that nowhere does the court indicate that it is addressing mandatory non-competitive sources like we have here. And the issue in that case wasn't about mandatory sources, but about the federal supply schedule, which is not mandatory and non-competitive. It is a, I'm sorry, it's a competitive process, which the trial court got wrong. The trial court misunderstood that. And the court never mentions or even discusses mandatory non-competitive sources. But while the court's silent on those, on mandatory and non-competitive sources, the court does mention specifically in several places competition and competitive procedures. So for example, at page 1977 of the court's opinion, when the court says admittedly that the department is required to use the rule of two before awarding a contract to another supplier, in the very next sentence, the Supreme Court goes on to say, the use of the word shall demonstrates that 8127D mandates the use of the rule of two in all contracting before using competitive procedures. So that general language that's referring generally to contracting in King to where it needs to be read in the context of the issue there and the fact that the court then goes on to specifically reference competitive procurements. I know your time is up, so I'm not going to count this against you. But I just have a housekeeping question that your friend can answer as well. I just want to make sure what contracts we're talking about, what we're not talking about. It's my understanding that the only issues in dispute here related to the contract for VISN 2 and 7. Is that correct? Is it your view that the parties agree that those are the only remaining contracts? Yes, it's VISNs 2 and 7. And those are the only two. We've got the court, the CFC's order, which talked about contracts and have dates September 30, 2017 and the contract by 2018 of January. And then she proceeded to stay her judgment. So have those contracts not been awarded at all, the ones that she was referring to? Are they just stayed? The award of those contracts are stayed? The trial court stayed her injunction, which was going to require VA to apply the rule of two, potentially conduct competitive procurements. She refers to these two contracts. So have these two contracts been awarded, the one she referenced, the date of September 30, 2017 and January 21, 2018? Has the government gone ahead and awarded those contracts? The government has gone ahead and awarded contracts to the AbilityOne nonprofit agency, Winston-Salem, and has stayed its injunction, which would have required VA to apply the rule of two. If the rule of two is satisfied, then VA would have competed. So what happens if we were to agree hypothetically with the Court of Federal Claims? Do those contracts get undone? Does the other side just get an award of new contracts? What's the relief provided, assuming, of course, that we would affirm the CFC? There are, Your Honor, I don't, to be honest, I don't know exactly what mechanism VA would have to use if they would have to terminate the existing contracts or let the first, because some of them are in, one of them has option periods. So the option period could run, and then VA could choose not to renew or enter into additional option periods. OK, thank you. Good morning, Your Honors. There's been a lot of discussion about the mandatory language in the 2006 VBA, but the JWAG statute also contains mandatory language. It also has an absolute. So what guide, I appreciate that, and I think we all understand what the language says, so I don't mean to cut you off. Of course. So what are we to do with that? What are the rules of construction when you've got, there's no dispute, you've got two mandatory statutes, and what do we do? Is one of the principles we apply, which is more specific or less specific? Do we apply a temporal thing? The last one gets precedent over the former one. What are the rules that you would have us apply? So the rules that Your Honor mentions are, of course, some of the rules of candidates of statutory construction that could be applied here. But these, importantly, are just guidelines. And you need to look at the totality of the circumstances. And another important canon here is if you can try to reconcile the two statutes to give meaning and intent to both, that's what the court should do. And so here, in order to do that, it's important to think about the context, not just that my colleague from the government has articulated in terms of the FAR, but additionally of the Small Business Act itself. The 2006 VBA is silent as to JWAG. Accepts that everyone acknowledges that. This is a statute that's been in existence and has been interpreted for over 80 years. And so for Congress to simply decide that it's going to make a big change in the way that this statute is applied, without mentioning it, would be at a minimum odd. And so what are we to take from that? What clues did Congress give us? There is a statute that is mentioned directly in the 2006 VBA, separate from the 2006 VBA, which is the Small Business Act. The text of the 2006 VBA is replete with references to the Small Business Act. Definitions are imported. And what the Small Business Act imposed many, many years earlier, so after the enactment of JWAG, but well before the enactment of the 2006 VBA, was its own mandate. There was a separate mandate for contracts to be set aside for small business in excess of the, any time you're over the simplified acquisition threshold. This was an existing mandate prior to the enactment of the 2006 VBA, to which VA and all other agencies were required to adhere. That's an existing mandate. And for the entirety of that time, while that mandate was in existence, JWAG was always interpreted as having primacy over the Small Business Act mandate. Now, what changes with the enactment of the 2006 VBA is it's actually a modification for VA only of the requirements under the Small Business Act. The Small Business Act dictates that you have a set-aside for small business in certain circumstances, but not which set-aside you use. You could use an 8A set-aside. You could use a women-owned business set-aside. You could use HUBZone. You could use the SDVOSB set-aside that's provided for, or any of the others that are in the Small Business Act. What the 2006 VBA changes for VA is you don't have the discretion anymore, VA, to decide which of these you're going to use. You now have to put the veterans' organizations first. But isn't that the whole point of the 2006 Act is that it was to benefit veterans, including disabled veterans? Correct. And the 2003 Act had a specific exception that Congress presumably was aware of and didn't write that exception into the 2006 Act. Yes, Your Honor, absolutely agree that the main purpose of the 2006 VBA is to benefit veterans. But it's in this context of small business set-asides. And it's a reprioritization of the small business set-asides. And that's set forth in 8127I, which my colleague also mentioned, which puts the veteran SDVOSB first, and then veterans. And then you go to 8A. And then you go to women-owned. And then you go to HUBZone, as it's laid out there. That's something that didn't exist before the enactment of the 2006 VBA. And it's significant. The other significant change that's particularly noteworthy here is that, if you think about how Kingdomware came about, if VA was already required pre-2006 VBA to do set-asides for small business, how did we end up with an FSS award? The reason is that the Small Business Act itself, at 644R of 15 USC, exempts the FSS from the small business set-aside mandate. And so what the 2006 VBA also does with its introduction of shall language is to remove that exemption as to the VA. OK, thank you. We've run out of time. OK. Thank you. Before you begin, and we won't run the clock yet, could you just respond if you have any disagreement with the government's view on the logistical issue I was asking about in terms of the remedy of what's happening now with respect to the ongoing contracts? Absolutely, Your Honor. It is our understanding that I appreciate you bringing this up because there has been some waffling down in the court below as far as what contracts were at issue on this. The government tried to evade some of that through some partial corrective action. But as I understand it, the latest information I had was for VISN 2, there was a contract in place through September 30, 2017, with an option to run until January 31, 2018. That's as far as we have in the record. So I would assume that's the option. Oh, we don't know. It's not in the record. Yeah, beyond January 13, 2018. But even so, that contract would have already terminated. That's exactly correct, Your Honor. I'm assuming based on what the VA had done leading up to that contract, where there had been various shorter term bridge contracts for the period between 6, 9, 12 months, I'm assuming that those have been awarded. But I don't know exactly that for certain. That's for VISN 2. For VISN 7, there is a blanket purchase agreement that is in place that is running between July 2016 and July 2021. There would, there was. So what kind of relief, if you were to prevail here, what kind of relief would you be entitled to with respect to, for instance, that contract, the ongoing thing? Fundamentally, Your Honor, we think it would need to go back to a remand to Judge Firestone so that she could set new dates. PDS has never taken the position that a contract needs to stop in a moment and disadvantage the veterans that the VA is supposed to serve. We've always recognized that there may inevitably need be a wind down period. And we would recognize that that would be here. We were reluctantly OK with the dates that Judge Firestone set of September 30, 2017, and January 31, 2018, for the transitions on VISN 2 and 7. Those were not the dates that we would have preferred. But those were the dates that the VA represented were all that they could accomplish. And Judge Firestone gave them the benefit of that doubt. We think that, frankly, going back again, there would need to be some discussion with the VA as far as what's practical, what's feasible. Fundamentally, there would need to be an analysis as far as the record. All right, I appreciate it. I think you've been receptive. All right, one more housekeeping question. What's the status of the District of Columbia case? Well, the status of the District of Columbia case is it stayed pending the resolution of this appeal. There is a parallel case as well out in Colorado. And I don't know the exact status on that. But I believe that one has also been stayed. Your Honors, my name is David Gallagher. I'm here with Ms. Emily Theriault on behalf of PDS Consultants. We believe that this court should affirm the court below because the plain language of the Veterans Benefits Act in 8127D unambiguously requires. Let me just ask you about legal principles. As your friend pointed out, we've got two statutes, both of which contain mandatory language. So is she not correct that one of the overriding or first principles we should apply is, is there a way that we can reconcile these two statutes? Absolutely, Your Honor. And so that leads her to say, yes, there is a way. Why is that wrong? If that's a principle we're supposed to try to apply. So we would agree on this point that it is important to reconcile these statutes and that they are not necessarily in conflict, although they do exist in tension. The fundamental problem with the formulation that the government has presented is that it undermines the plain language of the Veterans Benefits Act that is designed to put veterans first. Their attempt to reconcile the two statutes puts the ability one first and veterans second. And with all due respect, when it comes to the VA, and that's all that the VBA applies to is just VA procurements, our position is that the VA should, and frankly under the statute, must put vets first. And so you recognize they're in conflict, right? And the two are in direct conflict. They're both mandatory. And with respect to this particular group of contracts, there's a mandatory dictate in both statutes. So there's a conflict, right? There would certainly seem to be in this situation. There's a lot of ink spilled in the briefs as to whether or not they're just in tension or attempts to harmonize them. But I think that, frankly, I agree, Your Honor. OK. And so therefore, the guiding legal principle of statutory interpretation you would have a supply is what? Specific versus general? Well, we would start by looking at the plain language of the statute. 8127D sets out, and as the US Supreme Court unanimously held in the Kingdomware decision, it sets forth an unambiguous shall requirement for the VA.  That's absolutely true, Your Honor. And so that would then lead us to the canons of construction that have been included in our briefs. And there's the issue of the more specific would override the more general. And there's also the later in time would override the earlier in time. And I think, frankly, those two canons are informative here. And they certainly seem to indicate that the VA and the VA only should apply the VBA, giving veteran-owned small businesses priority over AbilityOne for VA procurements. Fundamentally, the AbilityOne program will still have priority throughout the entire rest of the United States government. That shall is clear, because the mandate under 8504A is clear that, in general, they shall have priority. You're creating an exception to that statutory requirement. That's exactly correct. And it's under the principle there of the more specific statute here would govern. And your friend on the other side would argue, well, no, what that is is now you run up against the principle that says we don't favor repeals by implication, even partial repeals by implication. Well, Your Honor, I don't think that it's necessarily a repeal by implication here. As was discussed earlier, the way that Congress indicates as to which statutes have priority is it spells that out in a specific statutory language. Here, there's nothing in 8127. There are no exceptions for purchases from anyone other than a veteran-owned small business. Kingdomware specifically recognized it didn't authorize purchases from the federal supply schedule. But it says it's because there's no exception language that would allow purchasing from anyone else. The issue here is different than the specific issue that the Supreme Court confronted in Kingdom. They weren't faced with the argument and arguably the fact that they were dealing with non-competitive contracts versus competitive contracts. That issue was not in any way, shape, or form presented to the Supreme Court in Kingdomware, right? Well, I would agree, Your Honor, that the facts here are slightly different from in Kingdomware. But I think that the holding and the court's analysis in Kingdomware. No, but was that issue undertaken or litigated in the Kingdomware case? That issue was not directly addressed in Kingdomware. What was directly addressed by the US Supreme Court in Kingdomware was, what priority does 8127 give, or excuse me, what mandate does 8127 give to the VA to purchase from veteran-owned small businesses? And the instruction was that, subject to certain exceptions, limited exceptions, in subparagraphs B and C of 8127 that allowed for non-competitive processes amongst veteran-owned small businesses for lower value procurements, the 8127D mandate is that, in all other instances, the VA shall conduct a rule of two analysis. And that requires them to look in and assess whether or not there are two or more veteran-owned small businesses that could meet the agency's need. There's no exception for anything, including the FSS or ability to consider other exceptions. Excuse me. I'm trying to answer. I apologize. You referred to the holding in Kingdomware. But the point is that there may be very broad language, but doesn't the holding have to be interpreted in view of the facts that were being considered? Well, you're right. I would read specifically from the Kingdomware decision here that says, we, quote, hold that 8127 is mandatory, not discretionary. Its text requires the department to apply the rule of two to all contracting determinations and to award contracts to veteran-owned small businesses. The act does not allow the department to evade the rule of two on the ground that it has already met its contracting goals or on the ground that the department has placed an order through the Federal Supply Schedule, close quote. They don't say on the ground that the JWOD exists and sets a different priority, right? That's not a question that was addressed. It's not a question. But specifically, what was addressed by the court was whether or not there were any exceptions in 8127. There was a particular exception, the VBA saying it already met its goals, whether that was an exception that would apply, right? That was certainly an issue that was considered, Your Honor. But the court specifically indicated that there were no other exceptions spelled out in the plain language of the statute. I freely acknowledge that nothing in 8127 says that this will apply and override the AbilityOne program. It doesn't say that. But what the court acknowledged is there's no language in 8127D that allows for purchases from any other source outside of veteran-owned small businesses. Do you agree with your friend on the other side that even before 2003, the AbilityOne was viewed as an exception to all contracting, even at the VA? Yeah, I think that's true, Your Honor. And I think probably rightly so, prior to the enactment of the Veterans Benefit Act. There is priority for the AbilityOne program. So what was the import or the impact of having put the AbilityOne exception expressly in the statute in 2003, and then it not appearing in the statute in 2006? Well, I think what it shows, Your Honor, is specifically Congress knows how to set the priority that it wants the agencies to implement. And in one situation where Congress considered priorities for veterans, and in the 2003 amendments to the Small Business Act, that specifically considered discretionary set-asides, government-wide for service-disabled veteran-owned small businesses. And Congress, in that situation, and this is at 15 U.S.C. 657-F, Congress specifically in that situation said, for these government-wide procurements, we're going to give AbilityOne priority. That's built into the statute in subsection C. But in this situation with the VBA, there's no such language that gives priority. So I think what this court should take from that is this court knows how to express priority when it wants to. Another point on this, Your Honor, is that the AbilityOne program, the JWAD statute, actually also employs this canon of construction that Congress can specifically spell out when something has priority. 41 U.S.C. 8504B specifically states that the federal prison industries program shall have priority over JWAD when it comes to buying products. So the fact of the matter is, is even the AbilityOne program that is trumpeted is so inviolate here throughout the briefing, even the statute recognizes that there are still priorities that ride over that. This is important, I think, Your Honor, because the VA has recognized that the VBA takes priority over federal prison industries. So if we have JWAD down here at level 3, federal prison industries by statute is above that. And then above that, we have the VA that has previously recognized, including in federal register sites that we identify in our brief, that the VBA has priority over that. I think it's clear here the order and the priority that Congress is trying to express. What the government tries to- How does the FAR provision impact on the understanding of those priorities? Well, I think the FAR provision impacts in two ways. First, the FAR priority that's identified includes specific language at FAR 8.002 that specifically states, except as otherwise provided by law. And our position is that the VBA separately expresses that priority, that for purposes of VA procurements only, the VA should have priority. So the FAR has not been updated to reflect that. Or the VAR, the Veterans Acquisition Regulation, has not been updated to reflect that because, frankly, our position is that the VA has not properly implemented the Kingdomware decision or the VBA in the wake of the Kingdomware decision. One other point that I'd like to make, Your Honors, relating to this competitive versus mandatory. The only reference in 8127d to mandatory is, frankly, the mandatory shall language. But that word mandatory that the government has pointed to as requiring some sort of a special or a different dispensation for Ability One, that's an invention. That language does not exist anywhere in 8127d. And the government's attempt to try to pull in and graft in concepts from the Small Business Act and from the Competition and Contracting Act and the FAR, I think, frankly, that's not the proper way to interpret this statute. The US Supreme Court indicated that this statute was unambiguous. And so I think we start with the language that's in the statute. And when it speaks in terms of competition amongst, when it speaks in terms of competitive procurements in 8127d and restricted competition, I think it's rather clear that it's not referring to the Ability One program, but rather restricted competition amongst veteran-owned small businesses when the rule of two is satisfied. With regard to references to competition or, excuse me, exists under the FAR, with all due respect, the proper way to interpret this is through applying the VBA statutory mandate. The mandate would override and should, frankly, drive the policy that's expressed in the Federal Acquisition Regulation. Is it relevant that this contract was awarded by a contracting officer rather than by the Secretary? I don't think that's a relevant fact, Your Honor. The authority has been delegated down to the contracting officers to buy in the United States of America. So I would view the authority of the two as, for purposes of conducting a procurement, roughly co-equal. Unless the court has any other questions, PDS respectfully requests this court to affirm the trial court below. And thank you. Thank you. The goal here is to harmonize 8127D with the JWAD. And the court can do that by reading 8127D's plain language and restricting it to the situation where VA has, in accordance with a whole set of rules for determining whether it's going to have a competition, whether VA has stepped into the competition lane, if you will. The JWAD is not in that lane. It's over here. It's a different set of rules. It's about a non-competitive process. And 8127D refers to restricted competition. But whether it's competitive or not, I don't really understand the argument that it's not awarding a contract under JWAD. The agency would be awarding a contract under JWAD. But the question is whether the VA's obligation to conduct the Rule of Two exists only once VA has determined that it's going to have a competition. And that's what a restricted competition is, is once the VA has determined that it can have a competition, what's it going to look like? And here, VA never gets to that step of determining what its competition is if the JWAD is a mandatory source under the FAR. And so a PDS, and the trial court would have, is rejigger how a contracting officer applies the CICA and the FAR. And so now, under CICA, VA can use the urgent and compelling basis for avoiding competition altogether. Are we to read 8127D to mean that now VA must first determine if the Rule of Two will apply and can't go to that exception to competition altogether? That's what PDS is arguing, is that the statute requires competition, full stop. Then decide whether it's going to be restricted or not. And you've now cut out a whole procurement scheme involving the FAR and CICA that VA now just doesn't apply anymore because of 8127D. And there's nothing in the statute to suggest that that was the Congress's intent. The issue in Kingdomware was whether VA could use discretion to use the federal supply schedule once it met its contracting goals. That's not the issue here. And I just want, the last thing I'll say is that there's nothing in 8127D that suggests that Congress was trying to override CICA and the FAR. And so again, if the court puts 8127D in the competition lane and recognizes that's where it is and that it doesn't have anything to do with non-competitive procurements, then the court can avoid the conflict the trial court seemed to think there was. Thank you. We thank both sides, and the case is submitted.